718 P.2d 189

The STATE of Arizona, Petitioner,

v.

The SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF COCHISE, and the Hon. James L. Riley, Division III, Respondent,

and

Fredrick Andrew BLAKE, Real Party in Interest.

No. 2 CA–SA 0254.

Court of Appeals of Arizona, Division 2, Department A.

July 25, 1985.

Allan K. Polley, Cochise Co. Atty. by Dennis L. Lusk, Phoenix, for petitioner.

Robert Arentz, Cochise Co. Public Defender, Bisbee, for real party in interest.

Frederick S. Dean, Tucson City Atty. by R. William Call, Stephen D. Neely, Pima Co. Atty. by John R. Gustafson and Sandra M. Hansen, Tucson, Robert K. Corbin, Atty. Gen. by Samuel R. Ruiz, Thomas E.

Collins, Maricopa Co. Atty. by Patrick R. Sullivan, Phoenix, for amici curiae.

HOWARD, Judge.

This special action concerns the use by law enforcement personnel of a field sobriety test called horizontal gaze nystagmus (HGN). Since considerable public funds are about to be spent by the Governor's Office of Highway Safety, Arizona Department of Transportation, for the training of law enforcement officers throughout the state in the use of the HGN test, special action is appropriate. We hold that the trial court erred in deciding that the HGN test could not be used to determine probable cause and in dismissing the prosecution.

In the early morning hours of March 18, 1985, the real party in interest, Fredrick Blake, was driving an automobile on State Route 92 south of Sierra Vista, Arizona. He was stopped by Officer Hohn of the Arizona Highway Patrol who suspected him of driving while under the influence of alcohol. The officer had Blake perform a series of field sobriety tests and he also had Blake perform the HGN test, which involves requesting a person at the time of the stop to concentrate on an object (usually a pen) held by the officer slightly above the driver's eye level. The object is held initially directly ahead of the driver's eyeball while it is centered and looking straight forward in relation to the head. The object is then moved toward the outside of the driver's field of vision, toward the ear and away from the nose. The officer then observes the onset of an involuntary oscillation of the eyeball and measures the angle of the onset of this oscillation in relation to the center point. The officer then calculates the blood alcohol level based upon the angle of the onset of the oscillation.

Blake's performance of the standard field sobriety test was fair, but when the HGN test was administered, the officer had no doubt that Blake had a blood alcohol content (BAC) of more than .10 per cent. In fact, he estimated that from the result of the HGN test Blake had a BAC

of .17 per cent. Blake was arrested and an intoxilyzer was subsequently administered which showed that Blake had a BAC of .163 per cent. Blake was charged, inter alia, with driving while under the influence of alcohol in violation of A.R.S. § 28–692(B), which makes it unlawful to drive with .10 per cent or more of alcohol in the blood.

Blake made two motions in the trial court: to dismiss the prosecution for lack of probable cause to arrest and in limine to preclude the admission of the HGN test and its results at trial. At the hearing on the motions, Officer Hohn stated that without utilizing the results of the HGN, he did not believe that he had probable cause to arrest Blake.

The trial court concluded that the HGN test failed to meet the test of reliability under *Frye v. United States*, 293 Fed. 1013 (D.C.Cir.1923), and thus could not be used to form probable cause. The court then dismissed the prosecution.

The trial court was incorrect in deciding that the HGN test had to meet the *Frye* test before it could be used to determine probable cause to arrest. The *Frye* test, as adopted in Arizona, is as follows: "To be accepted by a court as fact, a scientific principle must have gained general acceptance in the particular field in which it belongs." *Scales v. City Court*, 122 Ariz. 231, 594 P.2d 97 (1979). See *State v. Roscoe*, 145 Ariz. 212, 700 P.2d 1312 (1984). The *Frye* test governs the admissibility of scientific evidence at trial. However, such evidence need not meet the *Frye* test in order to be utilized to determine probable cause to arrest. Probable cause to arrest exists where the arresting officer has reasonably trustworthy information sufficient to lead a reasonable person to believe that an offense has been committed and that the person to be arrested committed it. *State v. Nelson*, 129 Ariz. 582, 633 P.2d 391 (1981). Only the probability and not a prima facie showing of criminal activity is the standard for probable cause to arrest. *State v. Emery*, 131 Ariz. 493, 642 P.2d 838 (1982). When assessing whether probable

cause exists, police officers are entitled to rely upon information not admissible at trial. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1897 (1949) (in a prosecution for importing intoxicating liquor into Oklahoma from Missouri in violation of the federal statutes, testimony by an investigator of the Alcohol Tax Unit that he had arrested Brinegar several months earlier for illegal transportation of liquor and that the resulting indictment was pending in another court at the time of the trial of this case was admissible at a hearing on the motion to suppress where the issue was not guilt but probable cause). In *Brinegar*, the court remarked:

"The court's rulings, one admitting, the other excluding the identical testimony, were neither inconsistent nor improper. They illustrate the difference in standards and latitude allowed in passing upon the distinct issues of probable cause and guilt. Guilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard. These rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property.

However, if those standards were to be made applicable in determining probable cause for an arrest or for search and seizure, more especially in cases such as this involving moving vehicles used in the commission of crime, few indeed would be the situations in which an officer, charged with protecting the public interest by enforcing the law, could take effective action toward that end. Those standards have seldom been so applied." 69 S.Ct. at 1310.

Four witnesses testified for the state on the motion to dismiss and motion in limine. Marcelline Burns has a Ph.D. from the University of California at Irvine and is a research psychologist. She is also the director of the Southern California Research Institute. The Institute is a non-profit organization incorporated by a group of researchers from UCLA, including Dr. Burns. In 1975 the United States Department of Transportation, the National Highway Safety Administration, awarded a research contract to the Southern California Research Institute to investigate and to develop the best possible field sobriety tests. Dr. Burns was the project director and conducted the research. As a result of the research the Institute recommended a three-test battery, one of which was the HGN test. Their research found a correlation between blood alcohol content and HGN and they developed the following formula: Fifty degrees minus the angle of the gaze of the onset of eye oscillation equals the BAC. This formula was validated in the field as a result of 450 administrations of the test. They found that they were able to distinguish above and below .10 per cent blood alcohol at an accuracy level of 80 per cent. Researchers in Finland had also been studying and using the HGN test and their results were the same as these of the Institute.

Based on the research done by the Institute, the National Highway Traffic Safety Administration has developed a training manual and training program on the HGN test and is now training law enforcement officers nationwide on the use of the test. Dr. Burns has conducted training sessions in Arizona and California, teaching law enforcement officers to administer the HGN test. Dr. Burns testified that the HGN test had been accepted as valid by the National Highway Traffic Safety Administration, the Finnish researchers, the researchers at her institute, numerous state agencies such as the California Highway Patrol, The Arizona Highway Patrol, the Washington State Police, and by innumerable city agencies. There was no evidence introduced to show that the HGN test is not a valid test, or that it was not or had not been accepted by the particular field in which it belongs.

Also testifying for the state was Sergeant Richard Studdard, a police officer

with the City of Los Angeles who is currently a supervisor in the enforcement of DWI cases. He first became involved with HGN in 1960 at the Los Angeles Police Academy where he was taught to use it for barbiturate intoxication. In 1971 the department was having major problems convicting individuals for driving under the influence of drugs and decided that it would standardize a field sobriety test battery which was applicable to both alcohol and drugs. Their work in the field actually administering the HGN test showed a direct correlation between the percentage of alcohol and the amount of HGN, but it was not until 1977, when the Southern California Institute and Dr. Burns became involved, that their findings were corroborated. Sergeant Studdard actually participated in quite a few studies at the institute and was involved in double blind studies in which individuals were given alcohol or a placebo and were then examined by using the HGN test. The results were dramatic. The results of the HGN tests were extremely close to the actual blood alcohol level.

Sergeant Studdard also participated in programs at the National Highway Safety Administration and is now its consultant on field sobriety testing and HGN. He has actually trained officers in the Washington D.C. area and has been involved in a constant study of the HGN tests. He testified that he found that the accuracy rate of the HGN test in determining blood alcohol is between 80 and 90 per cent. According to Sgt. Studdard, the 10 to 20 per cent "inaccuracy" in determining the blood alcohol content is caused by the fact that drugs such as barbiturates or valium cause the same type of result on the HGN test as does alcohol. He also testified that the HGN test was especially useful in those cases where the usual field sobriety tests, such as walking a straight line and the finger-to-nose test, did not clearly disclose that the driver was under the influence. In the past, those drivers were not arrested, although they actually may have had more than .10 per cent of alcohol in their blood. Now, with the HGN test, officers are able to detect those individuals and keep them off the highways.

Sergeant Jeffrey Raynor is a sergeant with the Arizona Highway Patrol. He currently administers the HGN training program for the state. The Arizona Law Enforcement Officers Advisory Council (ALEOAC) is a statewide police certifying agency for police officer training. Sgt. Raynor established the training program for ALEOAC. Sgt. Raynor also testified to the benefits of administering the HGN test along with the usual field sobriety tests. His experience and the experience of other law enforcement officers has shown that an experienced drinker could have .13 or .14 BAC and still might be able to perform the traditional field tests very well, thus evading arrest.

The program in the state of Arizona for the use of HGN is included in a 20-hour course of instruction which also includes other standardized field tests. The officers are given a chance to practice the HGN test on suspects who have been dosed with various amounts of alcohol. In order to be certified by ALEOAC to administer the test, they first have to perform 35 practice applications of HGN. They then take an examination where there are live drinking suspects. They have five suspects on which they perform the test and they are required to determine correctly four out of five times, within .02 per cent, the BAC of the suspect. A police officer is also required to use the HGN test regularly and he is evaluated by a supervisor or in the field by Sgt. Raynor in his HGN training to make sure that the officer maintains his proficiency. Officer Robert Hohn had been certified as an HGN specialist. All the testimony at the hearing made clear that the efficacy of the HGN test depended upon the expertise of the officer who administered the test and that his education and on-the-job training were extremely important.

We conclude that the record shows not only that the HGN is sufficiently reliable to provide probable cause for arrest, but that with the proper foundation as to the expertise of the officer administer-

ing it, testimony concerning the administration of the test and its results is admissible at trial. The record shows that the HGN test has gained general acceptance in the field in which it belongs.

However, we wish to make clear that, on the record before us, we are unable to rule that the results of the HGN test administered to Blake would be admissible at trial. The record shows only that Officer Hohn was certified. This means that all he had to do was to be correct four out of five times in passing the exam. Considering the necessity of expertise on the part of the officer administering the test, and the importance of his continually working with the test in the field, we are unable to say that a sufficient foundation for admissibility has been laid. We do note, however, that Officer Hohn kept a log of the times the test was administered. This log would be useful if it demonstrated that Officer Hohn was as proficient in the field as he was on the examination.

The order dismissing the case is vacated and set aside and the case is remanded for further proceedings consistent with this opinion.

LIVERMORE and FERNANDEZ, JJ., concur.